IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES R. RUNYON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 08-029-GMS |
| | ) |
| ATTY. GEN. JOSEPH R. BIDEN, III, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, James R. Runyon ("Runyon"), an inmate at the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. (D.I. 3.) He has also filed a motion for a temporary restraining order and preliminary injunction. (D.I. 1, 2.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 6.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

**I. BACKGROUND**

Runyon testified against a fellow inmate during the inmate's murder trial. Runyon alleges that the person he testified against is somewhere in the vicinity where Runyon is currently housed. On February 13, 2007, he advised several defendants that he had testified and was told they were aware of his testimony. Runyon was housed in Segregation and because of his testimony, on February 15, 2007, asked to be placed in protective custody. During March, May, and June 2007 Runyon wrote to several defendants, again asking to be placed in protective custody.

The end of June, 2007, Runyon went into a "psychological frenzy" after inmates began threatening and harassing him because he testified in the murder trial. Unnamed prison authorities pepper sprayed and restrained Runyon. They used Runyon's face as a "battering ram," and while shackled and handcuffed, ran Runyon head first into concrete walls and doors. Runyon suffered injuries to his head and face, and received medical attention.

In July 2007, Runyon was housed in the infirmary and placed on suicide watch after he attempted suicide. While in the infirmary, he informed the mental health defendants that his life was in serious danger and he wanted to be placed in protective custody. He was returned to segregation/isolation. After his return to segregation, Runyon became "psychologically deranged" from the threats and harassments and smeared feces on himself and his cell. He was returned to the infirmary for a second time for a twenty-four hour restraining period. Again, in July, he returned to the infirmary for a third time on suicide watch. He reiterated his request to be placed in protective custody. Runyon returned to segregation/isolation.

On August 8, 2007, Runyon wrote to several defendants and asked to be placed in either protective custody or transferred to another institution. He also filed for an inter-state compact transfer. During August and September 2007 Runyon kept in close contact with the mental health defendants regarding his emotional and psychological state and his fear of being assaulted. Runyon repeated his requests to the mental health defendants for protective custody placement. On September 23, 2007, Runyon wrote a letter to the mental health director regarding his need to be placed in a different facility.

During October 2007, Runyon was advised by the defendant Staff Lt. Hawkins that she

was looking into his claims that his life had been threatened.[1] Correction Officers ("C/O") Pierce and Pitts acknowledged the seriousness of Runyon's concerns. On October 8, 2007, Runyon asked the mental health director to place him in protective custody.

On October 14, 2007, Runyon filed two grievances against Correctional Medical Services ("CMS") and the mental health unit for negligence, violation of his privacy, safety, and mental health concerns. In November 2007 Runyon wrote letters and informed the defendants that his life was in danger and requested a transfer to another prison or a reclassification to protective custody.

On December 6, 2007, Runyon wrote to several State officials, and photocopied several prison officials, informing them of "the life threatening dangers" as well as the "violation of his constitutional right to be protected." He also wrote a letter requesting an investigation into his "life threatening issues," but no investigation took place. On the same date he wrote to his sentencing judge regarding his safety concerns. Additionally, Runyon filed an appeal of his housing classification and requested a reversal of his classification and a transfer to another facility. He also filed a grievance and wrote to his counselor requesting a transfer and placement in protective custody. On December 14, 2007, Runyon submitted a medical grievance for failure to provide adequate mental health care.

Runyon alleges he was denied adequate mental health care in violation of the agreement signed between the U.S. Department of Justice and the State of Delaware and that his medical

---

[1] Runyon states that an inmate in segregation slid the trial transcript under his cell door with a death threat. Runyon provided the transcript to C/Os Pierce and Pitts so they could make copies.

and mental needs were neglected[2]; he was retaliated against after filing medical grievances when his psychiatric medications were stopped in violation of the agreement signed between the U.S. Department of Justice and the State of Delaware; defendants were deliberately indifferent towards his protection and safety when they failed to place him in protective custody or transfer him to another facility; he was subjected to excessive force; and he was subjected to cruel and unusual punishment when the defendants failed to place him in protective custody or transfer him to another facility.

## II. STANDARD OF REVIEW

When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In performing the court's screening function under § 1915(e)(2)(B), the court applies the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Fullman v.*

---

[2]The Civil Rights Division of the United States Department of Justice ("USDOJ") conducted an investigation of five Delaware prison facilities pursuant to the Civil Rights of Institutionalized Persons Act, which authorizes the federal government to identify and root out systemic abuses. The investigation found substantial civil rights violations at four of the five facilities: Delores J. Baylor Women's Correctional Institution, Howard R. Young Correctional Institution, DCC, and Sussex Correctional Institution. The investigation resulted in the entry of a memorandum of agreement on December 29, 2006, between the USDOJ and the State of Delaware regarding the four institutions. Paragraph I.F. of the agreement provides that it may not be used as evidence of liability in any other legal proceeding.

*Pennsylvania Dep't of Corr.*, No. 4:07CV-000079, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007) (citing *Weiss v. Cooley*, 230 F.3d 1027, 1029 (7th Cir. 2000). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, –U.S.–, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8. A complaint does not need detailed factual allegations, however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

      The plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. *Id.* (citing *Twombly*, 127 S.Ct. at 1965 n.3). Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Id.* at 235 (quoting *Twombly*, 127 S.Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of' the necessary element." *Id.* at 234. Because the plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

## III. DISCUSSION

### A. Housing/Classification

Runyon's main complaint is that, after he testified in a murder trial, he was not transferred to protective custody or to another institution for his own safety. Initially, the court notes that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Moreover, neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* Del. Code Ann. tit. 11, § 6529(e). "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). Finally, the Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside

that state. *Olim v. Wakinekona,* 461 U.S. 238, 251(1983).

Runyon's housing/classification claim has no basis in law or fact. Accordingly, it will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**B. Failure to Protect**

Similar to his housing/classification claim, Runyon alleges the defendants failed to protect him from harm when they did not transfer him to protective custody or to another institution. The complaint, however, does not state a claim for failure to protect.

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). *See Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994); *see also Griffin v. DeRosa,* 153 Fed. Appx. 851(3d Cir. 2005).

Runyon complains that a transfer was necessary for his safety and protection from other inmates because of his testimony at the murder trial. There are no allegations, however, that despite his fear, other inmates harmed Runyon. Consequently, the complaint fails to state a failure to protect claim. Accordingly, it will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**C. Excessive Force**

Runyon alleges that in June, 2007, he went into a "psychological frenzy" and thereafter unnamed prison authorities pepper sprayed and restrained him. Next, they used Runyon's face as a "battering ram," and while shackled and handcuffed, ran him head first into concrete walls and

doors. Runyon suffered injuries to his head and face.

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir.1978)). The complaint does not provide the names of the persons responsible for the alleged excessive force. Therefore, the excessive force claim will be dismissed without prejudice pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Runyon will be given leave to amend the excessive force claim to name the individuals allegedly involved.

### D. Retaliation

Runyon claims he was retaliated against for filing medical grievances on October 14 and December 14, 2007. The retaliation was by the defendants Mental Health Unit, Mental Health Director Stuart Stuthers ("Stuthers"), and Correctional Medical Services ("CMS") and consisted of denial of Runyon's psychiatric medication. Proof of a retaliation claim requires that Runyon demonstrate (1) constitutionally protected conduct; (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against." *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003) (citations omitted).

Applying the retaliation standard and construing the complaint liberally, Runyon has stated a claim of retaliation for his exercise of a First Amendment right against Stuthers and CMS. His claim against the Mental Health Unit fails inasmuch as it is not a person subject to

suit pursuant to 42 U.S.C. § 1983.[3] Therefore, the claim against the Mental Health Unit is dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### E. Medical/Medical Needs

Runyon alleges he was denied adequate mental health care and that his medical and mental health needs were neglected. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

Even when reading the complaint in the most favorable light to Runyon, he fails to state an actionable constitutional claim against the defendants for deliberate indifference to a serious medical need. Rather, the complaint is replete with references that Runyon was repeatedly taken to the infirmary and that he received medical and mental health care. The complaint fails to

---

[3]To state a viable § 1983 claim, a plaintiff must allege facts showing a deprivation of a constitutional right, privilege or immunity by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The claim against the Mental Health Unit is barred by *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69 (1989), which holds that neither states nor state officials sued in their official capacities for money damages are "persons" within the meaning of § 1983. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). The Mental Health Unit is part and parcel of the Delaware Department of Correction which in turn is an agency of the State of Delaware.

allege deliberate indifference to a serious medical need. Therefore, the medical/mental health needs claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

IV. **MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Runyon seeks injunctive relief in the form of a transfer to protective custody or another institution, and to preclude the defendants from retaliating against him. A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)(citation omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Id.* (citations omitted).

Upon review of the allegations made by Runyon, the court concludes that he has not demonstrated the likelihood of success on the merits. To the extent that Runyon seeks a different security classification, in Delaware, inmates have no constitutionally protected interest in their classification. *Riley v Snyder,* 72 F. Supp. 2d 456, 460 (D. Del. 1999); *Carrigan v. State of Delaware*, 957 F. Supp. 1376, 1385 (D. Del. 1997). Nor does he have the right to be transferred to a different institution. Moreover, as to the retaliation issue, Runyon provides rather general allegations. Finally, in light of the fact that Runyon's request regarding housing goes directly to the manner in which the Delaware Department of Correction operates it prison, an injunction would substantially harm Defendants. *See Carrigan v. State of Delaware*, 957 F. Supp. 1376, 1385 (D. Del. 1997). Accordingly, based upon the foregoing analysis, the motion will be denied.

## V. CONCLUSION

Based upon the foregoing analysis, the motion for a temporary restraining order and preliminary injunction will be denied. The court will dismiss the housing/classification, failure to protect, excessive force, and medical needs claim for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The court will also dismiss the retaliation claim against the Mental Health Department. Runyon will be given leave to amend the complaint as to the excessive force claim. He will be allowed to proceed on the retaliation claim against the defendants Stuthers and CMS. All other defendants will be dismissed from the case. An appropriate order will be entered.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

__May 20__, 2008
Wilmington, Delaware

FILED
MAY 20 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES R. RUNYON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 08-029-GMS |
| | ) |
| ATTY. GEN. JOSEPH R. BIDEN, III, | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

At Wilmington this 10th day of May, 2008, for the reasons set forth in the Memorandum issued this date,

    1. The motion for a temporary restraining order and preliminary injunction is **denied**. (D.I. 1, 2.)

    2. The claims against the defendants Atty. Gen. Joseph R. Biden, III, Dep. Atty. Gen. Paul Wallace, Commissioner Carl Danberg, Warden Thomas Carroll, Warden Elizabeth B. Burris, Deputy Warden David Pierce, Major Scarborough, Internal Affairs Joe Richardson, Captain Bergrenn, Staff Lieutenant Taylor, Staff Lieutenant Hawkins, Staff Lieutenant Sheets, Lieutenant Seacord, Lieutenant Satterfield, Sergeant Travies, C/O Pierce, C/O Pitts, Receiving Room Staff on 8 a.m. to 4 p.m. February 15, 2007, Counselor Tom Zanda, Counselor Tom Aiello, Counselor Linda Kemp, Mental Health Unit at DCC, and IBCC Classification Board Members are **dismissed** as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). The foregoing defendants are dismissed from the action.

3. Plaintiff is given **leave to amend** the complaint as to the excessive force claim. The amended complaint shall be filed within **thirty days** from the date of this order. If an amended complaint is not timely filed, then a service order will issue and the case will proceed solely on the retaliation claim against the defendants Stuart Stuthers and Correctional Medical Services.

_____
CHIEF, UNITED STATES DISTRICT JUDGE



FILED

MAY 20 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE